UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------------ x
KENNETH BIBILONI,                                                  :
                                                                   :
                              Plaintiff,                           :
                                                                   :
       v.                                                          :    3:25-CV-00071 (SFR)
                                                                   :
ROBERTS, *et al*,                                                  :
                                                                   :
                              Defendants.                          :
------------------------------------------------------------------ x

**INITIAL REVIEW ORDER**

Plaintiff Kenneth Bibiloni, formerly incarcerated in Connecticut Department of Correction custody, has filed a complaint[1] under 42 U.S.C. § 1983 alleging that New Haven Correctional Center ("New Haven CC") officials violated Bibiloni's constitutional rights in connection with his placement in the Security Risk Group ("SRG") unit at New Haven CC.

---

[1] Any reference to the "complaint" is to Plaintiff's amended complaint. *See* Am. Compl., ECF No. 14. Plaintiff was permitted to file this amended complaint without leave of court because Defendants have not been served. *See* Fed. R. Civ. Pro. 15(a)(1). Because "[t]he Second Circuit has long held that an amended complaint completely replaces the original complaint," *Jordan v. Chiaroo*, No. 3:24-CV-204 (VAB), 2024 WL 3925375, at *3 (D. Conn. Aug. 23, 2024) (citing *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977) (holding that the amended complaint completely replaces original complaint)), I will not consider allegations from Bibiloni's original complaint in considering the factual basis for his claims. *See Dinh v. Doe*, No. 3:24-CV-1042 (OAW), 2024 WL 3343006, at *3 (D. Conn. July 9, 2024) (noting that "the court will not consider any allegations made in the original complaint while evaluating any amended complaint.").

1

Bibiloni initially filed this lawsuit when he was incarcerated. Since that time, however, he has been released into the community. Therefore, I conduct this initial review pursuant to 28 U.S.C. § 1915(e)(2)(B) rather than 28 U.S.C. § 1915A.[2]

I have thoroughly reviewed all factual allegations in the complaint and order as follows.

## I.     BACKGROUND

### A.     Factual Background

Although I do not set forth all the facts asserted in Bibiloni's complaint, I will summarize his basic factual allegations here to give context to my ruling below.

Bibiloni entered New Haven CC on February 1, 2024. Am. Compl. ¶ 8, ECF No. 14. More than five months later, Defendants Lieutenants Dawson and Roberts and Correctional Officer Zack escorted Bibiloni to the Restrictive Housing Unit ("RHU") "for SRG allegations." *Id.* ¶ 9. Once there, correctional officers stripped Bibiloni of his clothing and placed him in segregation "pending punishment." *Id.* ¶ 10. Prison officials did not issue Bibiloni "proper notice," including a disciplinary report, "ticket," or demerit, before placing him in the RHU. *Id.*

---

[2] It is well-established that "*[p]ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Notwithstanding this liberal interpretation, however, a *pro se* complaint will not survive dismissal unless the factual allegations meet the plausibility standard. *See Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citation omitted). A complaint that includes only "labels and conclusions," "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement" does not meet the facial plausibility standard. *Id.* at 678 (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

Dawson, Roberts, and Zack told Bibiloni that prison officials were placing him in the RHU for "SRG consideration" because of a "photo they obtained from 2017 through [Bibiloni's] Instagram page." *Id.* ¶ 11. Dawson, Roberts, and Zack also told Bibiloni that they had phone transcripts "alleging gang activity and politics," electronic messages containing "gang politics," and photos from Facebook showing Bibiloni working at the Kutthroat Barbershop in San Diego, California. *Id.* ¶¶ 12–14. Dawson, Roberts, and Zack told Bibiloni that "Intel" had enough evidence to designate Bibiloni as a gang member and that Bibiloni would be so designated after his hearing. *Id.* ¶ 15. Dawson, Roberts, and Zack also told Bibiloni that the decision to designate Bibiloni as a gang member was "above their paygrade" and that "the decision has been made." *Id.* ¶ 16. In the two weeks Bibiloni was in the RHU awaiting the hearing on his SRG designation, he was not allowed to make any phone calls, receive any of his property, buy items from the commissary, and was at times prohibited from showering. *Id.* ¶ 22.

Bibiloni maintains that he never received notice of the hearing on his SRG designation, as required by the Department of Correction ("DOC") Administrative Directives. *Id.* ¶ 20. Before the hearing, another prisoner told Dawson, Roberts, and Zack that Bibiloni was not a gang member. *Id.* ¶ 18. Dawson told the prisoner that "it[']s too late for that." *Id.* At the hearing on Bibiloni's SRG designation, officials showed "little to no evidence" to Bibiloni. *Id.* ¶ 17. Bibiloni did not receive notification of the decision after the hearing, as required by the DOC Administrative Directives. *Id.* ¶ 20. Zack told Bibiloni after the hearing that "the decision was already made[,] regardless" and that Zack "didn't think [the evidence] was enough to designate [Bibiloni]" as an SRG prisoner. *Id.* ¶ 21.

Bibiloni was subject to SRG restrictions after his hearing. This included limited phone calls and commissary, no visits, no religious or educational programming, "no proper medical," "strategic lockdowns and shakedowns," no congregate meals, and no hot water or "hot pot" to cook food from the commissary. *Id.* ¶ 23. The showers were "filled with mold," and Bibiloni was not permitted to clean his cell. *Id.*

## II.   DISCUSSION

Bibiloni seeks damages and injunctive relief from five defendants, each in their official and individual capacities: Captain Papoosha (SRG Coordinator), Craig Washington (District Administrator), Roberts, Dawson, and Zack. *Id.* ¶¶ 4–6, 28–32. Bibiloni may not seek injunctive relief from any of these defendants because he is no longer imprisoned in DOC. *See* Notice of Change of Address, ECF No. 15; *Tripathy v. McKoy*, 103 F.4th 106, 113 (2d Cir. 2024) (holding that prisoner's request for injunctive relief became moot when he was released from prison). But Bibiloni may still seek damages from these prison officials. *See Ciaprazi v. Jacobson*, 719 F. App'x 86, 87 (2d Cir. 2018) (summary order) (noting that "[a] prisoner's release moots an action seeking injunctive relief against the prison, but not an action seeking damages"). Any claim for damages against Defendants in their official capacities is barred by the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Thus, Bibiloni may only seek damages from Defendants in their individual capacities.

Bibiloni may seek damages from Defendants in their individual capacities if Bibiloni alleges facts suggesting Defendants' personal involvement in a constitutional violation. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (stating that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983"). "Personal involvement may be shown by 'direct participation,' which requires in this context

4

'intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal.'" *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) (quoting *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001)). This is true with respect to supervisory officials, as well. *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020) (stating that a plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability"). Accordingly, I will first consider whether the complaint suggests a constitutional violation and then consider whether any defendant was personally involved in the constitutional violation. *See Wright*, 21 F.3d at 501.

As stated above, complaints filed by *pro se* plaintiffs "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes*, 723 F.3d at 403 (internal quotation marks omitted). Liberally construed, Bibiloni's complaint most strongly suggests: (A) a First Amendment claim related to officials' use of social media photographs to designate him an SRG prisoner, Am. Compl. ¶¶ 25–26, (B) a Fourteenth Amendment procedural due process claim related to his SRG designation hearing, *id.* ¶ 27, and (C) an Eighth Amendment conditions of confinement claim related to living conditions in the SRG unit, *id.* I will discuss each claim in turn.

### A. First Amendment Claim Related to Social Media Evidence

Bibiloni maintains that Roberts, Dawson, and Zack told Bibiloni that he was to be placed in the SRG unit because of phone call transcripts, "E-messag[es]", and photographs of Bibiloni on Instagram and Facebook. Am. Compl. ¶¶ 11–14. It is unclear whether incarcerated individuals have any constitutional right to make phone calls or send and receive electronic messages. *See Baxter v. Wagner*, 802 F. App'x 32, 33 n.1 (2d Cir. 2020) (summary order)

5

(noting that the Second Circuit "has not addressed whether a prisoner has a First Amendment right to make phone calls, but at least one Circuit has held they do in at least some circumstances") (citation omitted); *Dunlea v. Fed. Bureau of Prisons*, No. 3:10-CV-214 (CFD), 2010 WL 1727838, at *2 (D. Conn. Apr. 26, 2010), abrogated on other grounds by *Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135 (2d Cir. 2010) (noting that "research reveals no authority supporting a constitutional right to send and receive electronic messages via computer or other electronic device").

But to the extent incarcerated individuals have this right, an incarcerated individual has no reasonable expectation of privacy in such phone calls or electronic messages. *See United States v. Amen*, 831 F.2d 373, 379–80 (2d Cir. 1987) ("If security concerns can justify strip and body-cavity searches, and wholly random cell searches, then surely it is reasonable to monitor prisoners' telephone conversations, particularly where they are told that the conversations are being monitored") (citations omitted); *Mitchell v. Washington*, No. 3:24-CV-864 (SFR), 2025 WL 2336875, at *11 (D. Conn. Aug. 13, 2025) (noting that "[a]n individual has a reasonable expectation of privacy in the contents of his or her home computer, but that expectation may be extinguished when a computer user transmits information over the internet or by e-mail") (citing *United States v. Lifshitz*, 369 F.3d 173, 190 (2d Cir. 2004)).

And while it is true that Bibiloni enjoyed a First Amendment right to post his photographs on Instagram and Facebook before he was imprisoned, *see Packingham v. North Carolina*, 582 U.S. 98, 108 (2017) (holding that "to foreclose access to social media altogether is to prevent the user from engaging in the legitimate exercise of First Amendment rights"), courts in this district have concluded that using an incarcerated individual's social media posts to designate him as an SRG prisoner does not violate a prisoner's First Amendment rights. *See,*

*e.g., Robinson v. Doe 1*, No. 3:23-CV-1631 (SVN), 2024 WL 1639539, at *3 (D. Conn. Apr. 16, 2024) (noting that "[s]everal recent decisions in this district have held that allegations that prison officials relied on social media posts to determine whether an inmate was an SRG member do not satisfy the causal requirement to state a valid First Amendment retaliation claim") (collecting cases); *Shaw v. Washington*, No. 3:24-CV-00654 (KAD), 2024 WL 2053403, at *2 (D. Conn. May 8, 2024); *Lawrence v. Zack*, No. 24-CV-1142 (VDO), 2024 WL 4116928, at *5 (D. Conn. Sept. 9, 2024). Accordingly, Bibiloni's First Amendment claim is dismissed with prejudice for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e).

## B. Fourteenth Amendment Procedural Due Process Claim

Bibiloni also asserts a Fourteenth Amendment procedural due process claim related to his disciplinary hearing. Am. Compl. ¶ 27. "[T]he Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). Procedural due process analysis "proceeds in two steps: [a court] first ask[s] whether there exists a liberty or property interest of which a person has been deprived, and if so . . . whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (per curiam).

### 1. Liberty Interest

The Due Process Clause of the Fourteenth Amendment does not, by itself, generally create a protected liberty interest in conditions of confinement so long as the conditions are "within the normal limits or range of custody which the conviction has authorized the State to impose." *Meachum v. Fano*, 427 U.S. 215, 225, 228 (1976). Nevertheless, "there are

7

circumstances under which a state statute, policy, or regulation can create a protected liberty interest relating to conditions of confinement." *Quinones v. Quiros*, No. 3:24-CV-1805 (OAW), 2025 WL 90125, at *2 (D. Conn. Jan. 14, 2025). "But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection under the Due Process Clause of its own force . . . nonetheless imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (internal citations omitted). Thus, to assess Bibiloni's procedural due process claim, the court must first determine whether Bibiloni's confinement in the SRG Program constitutes an atypical and significant hardship.[3]

In determining what constitutes an "atypical and significant hardship," courts consider "[b]oth the conditions [of confinement] and their duration . . . since especially harsh conditions

---

[3] As other courts have recognized, "the liberty interest analysis under *Sandin* does not apply to pretrial detainees." *Edwards v. Dawson*, No. 3:24-CV-1821 (VDO), 2025 WL 1733246, at *6 (D. Conn. June 20, 2025) (internal quotation marks omitted) (citing *Benjamin v. Fraser*, 264 F.3d 175, 188, 190 (2d Cir. 2001)). Bibiloni states that he "was still a pre[-]trial detainee" when he was placed in the RHU pending his SRG hearing on July 12, 2024. *See* Am. Compl. ¶¶ 9–10. But Connecticut state court records show that Bibiloni was sentenced to one year of imprisonment on February 1, 2024, for violation of a protective order in U04W-CR20-0490940-S and two years' imprisonment for assault with a weapon in UWY-CR19-0458383-T. *See* State of Connecticut Judicial Branch, *Criminal/Motor Vehicle Convictions Search by Defendant*, https://jud2.ct.gov/crdockets/SearchByDefDisp.aspx (last accessed January 6, 2026). I may take judicial notice of these publicly accessible court records. *See*, *e.g.*, *Cuadrado v. Naugatuck Police*, No. 3:22-CV-00969 (SRU), 2023 WL 4133712, at *2 (D. Conn. June 22, 2023) ("[T]ak[ing] judicial notice of the information on the State of Connecticut Judicial Branch website[.]"). Although I generally accept allegations in Bibiloni's complaint as true for purposes of initial review, *Olivencia v. Brewer*, No. 3:25-CV-535 (SVN), 2025 WL 1951551, at *2 (D. Conn. July 16, 2025), I need "not accept as true any allegations . . . that are directly contradicted by court records." *Baldini v. Shah*, No. 17CIV8260ATJLC, 2018 WL 11226079, at *1 (S.D.N.Y. Aug. 9, 2018). Accordingly, I will analyze this claim as if Bibiloni was a sentenced prisoner, as opposed to a pretrial detainee.

8

endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (internal quotation marks omitted). Accordingly, there is no bright line rule that dictates when a specific period of segregative confinement automatically implicates or fails to implicate due process rights. *See id.* But in the absence of a "detailed factual record," the Second Circuit has affirmed dismissal of due process claims "only in cases where the period of time spent in [restrictive housing] was exceedingly short—less than the 30 days that the Sandin plaintiff spent in [restrictive housing]—and there was no indication that the plaintiff endured unusual [restrictive housing] conditions." *Id.* at 65-66 (citing *Hynes v. Squillace*, 143 F.3d 653, 658–59 (2d Cir. 1998) (per curiam) (21 days in keeplock); *Arce v. Walker*, 139 F.3d 329, 335–36 (2d Cir. 1998) (18 days in SHU); *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996) (12 days in SHU)).

While the timeline here is somewhat unclear, Bibiloni was escorted to the RHU on July 12, 2024. Am. Compl. ¶ 9. Bibiloni remained in the RHU for two weeks while awaiting his SRG hearing. *See id.* ¶ 22. Bibiloni was presumably placed in the SRG unit after his SRG hearing. *See id.* ¶ 23 (describing conditions of SRG unit). Bibiloni was still in the SRG unit on February 3, 2025, when he filed his complaint. *See id.* ¶ 32 (request for injunctive relief seeking removal from "this program and unit."). Bibiloni's initial two weeks in the RHU, though without phone calls, property, commissary, or regular showers, was comparatively short and did not involve unusual conditions. *See Palmer*, 364 F.3d at 65-66; *Pottinger v. Sanchez*, No. 3:15CV1236(VLB), 2016 WL 1254200, at *3 (D. Conn. Mar. 29, 2016) (concluding that, where "plaintiff spent fifteen days in punitive segregation[,] [s]uch a brief confinement in restrictive housing does not constitute an atypical and significant hardship"). With regards to

9

his presumed confinement after his SRG hearing, I cannot say the same about the months that Bibiloni spent in the SRG unit and the conditions he encountered there. *See* Am. Compl. ¶ 23.

Accordingly, for purposes of initial review, the Court considers Bibiloni's allegations sufficient to demonstrate an "atypical and significant hardship," thereby establishing a liberty interest in his SRG designation. *See Sandin*, 515 U.S. at 484; *Velez-Shade v. Population Mgmt.*, 2019 WL 4674767, at *11–12 (analyzing DOC directives and recognizing liberty interest in SRG classification); *Walker v. Doe 1*, No. 3:23-cv-1469 (SVN), 2024 WL 406299, at *4 (D. Conn. Feb. 2, 2024) (recognizing that "courts in this district have found that inmates have a liberty interest in their SRG classification"); *Wicker v. Papoosha*, No. 3:24-cv-1640 (VAB), 2025 WL 744273, at *5 (D. Conn. Mar. 7, 2025) (recognizing same). Thus, I must consider whether "whether the procedures followed by the State [to place Bibiloni in the SRG unit] were constitutionally sufficient." *Cooke*, 562 U.S. at 219.

### 2. Process Due

The process due to an incarcerated individual facing restrictive segregation depends on whether the basis for the decision is administrative or punitive. *See Jusino v. Rinaldi*, No. 3:18-CV-2004 (MPS), 2019 WL 2720763, at *5–6 (D. Conn. June 27, 2019); *Fowler v. Dep't of Corr.*, No. 3:17-CV-848 (JAM), 2019 WL 1025243, at *5 (D. Conn. Mar. 4, 2019). Where the prisoner's detention in restrictive confinement is administrative, such as SRG classification, his confinement is assessed under the standard set forth in *Hewitt v. Helms*, 459 U.S. 460 (1983). *See Jusino*, 2019 WL 2720763, at *6. Under *Hewitt*, the incarcerated individual must receive "some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation." *Hewitt*, 459 U.S. at 476; *see also Proctor v. LeClaire*, 846 F.3d 597, 609 (2d Cir. 2017). To

satisfy due process, the non-adversary proceeding must occur "within a reasonable time following the prisoner's transfer to administrative segregation," and the decisionmaker must review the charges and then-available evidence against the incarcerated individual. *Jusino*, 2019 WL 2720763, at *6.

The Supreme Court has also made clear that, to meet "the minimum requirements of procedural due process," a prison hearing officer's finding must be supported by "some evidence." *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985); *Elder v. McCarthy*, 967 F.3d 113, 123 (2d Cir. 2020) (stating that a prison official's disciplinary decision must be supported by "some reliable evidence"); *Hayes v. Behm*, No. 3:25-CV-294 (SRU), 2025 WL 3268347, at *6 (D. Conn. Nov. 24, 2025) ("A decision to place an inmate on SRG status must not only be supported by "some evidence[;]" that evidence must also be reliable."); *Muniz v. Cook*, No. 3:20-CV-1533 (MPS), 2021 WL 5919818, at *4 (D. Conn. Dec. 15, 2021) ("'Some evidence' really means 'some reliable evidence.'").

Bibiloni appears to challenge the sufficiency of process and sufficiency of evidence used to designate him as a SRG prisoner. As to Bibiloni's challenge to the sufficiency of process, he maintains that he never received notice of his SRG hearing. Am. Compl. ¶ 19. This allegation sufficiently suggests that Bibiloni did not receive the procedural protections due to him. *See Hewitt*, 459 U.S. at 476; *Proctor*, 846 F.3d at 609. As to Bibiloni's challenge to the sufficiency of the evidence, he asserts that "little to no evidence was shown to him" at the hearing. Am. Compl. ¶ 17. While this is different from alleging that prison officials produced "little to no evidence" at the hearing, Bibiloni also states that officers told him that "the decision [to designate Bibiloni as an SRG prisoner] ha[d] been made" before his hearing, *id.* ¶ 16, and Zack told Bibiloni after that hearing that "the decision was already made[,] regardless,"

11

*id.* ¶ 21. Both statements to Bibiloni suggest that the outcome of the hearing was predetermined. This is sufficient to suggest that the hearing officer's finding was not supported by "some evidence" on initial review. *See, e.g., Baltas v. Rizvani*, No. 3:21CV436 (MPS), 2023 WL 6216782, at *2 (D. Conn. Sept. 25, 2023) (permitting procedural due process claim to proceed where "allegations raise[d] at least an inference that [prisoner's] hearing was a mere formality and reflected a predetermined status; that his Administrative Segregation determination was not based on some evidence; and that he was not afforded an opportunity to present his views").

Having determined that Bibiloni's procedural due process rights may have been violated in connection with his SRG hearing, I must then consider whether any of the named defendants were personally involved in that violation. *See Wright*, 21 F.3d at 501. The complaint suggests that Roberts, Dawson, and Zack performed an investigative function that resulted in a hearing on the SRG allegations. *See* Am. Compl. ¶¶ 11–15. But these officers told Biblioni that the ultimate decision to designate Bibiloni as an SRG prisoner was "above their paygrade" and that "the decision ha[d] been made before [Bibiloni's] hearing." *Id.* ¶ 16 (internal quotation marks omitted). I cannot conclude from these allegations that any of these officers were responsible for providing Bibiloni notice of the SRG hearing. Nor can I conclude that these officers designated Bibiloni as an SRG prisoner on insufficient evidence, as that responsibility would fall to the disciplinary hearing officer, or "DHO." *See Rodriguez v. Lindsay*, 498 F. App'x 70, 72 (2d Cir. 2012) (summary order) (concluding that "the DHO's finding was supported by 'some evidence'").

The two remaining defendants—Captain Papoosha (SRG Coordinator) and Craig Washington (District Administrator "who oversee[s] any and all designation and

placement[s]," Am. Compl. ¶ 4)—are the type of defendants who may have been personally involved with the SRG hearing. But Bibiloni does not describe in his complaint how these defendants failed to provide him with notice or whether either of these defendants presided over the SRG hearing as the DHO. As such, I cannot conclude that Papoosha and Washington were personally involved in a procedural due process violation. *See, e.g., Edwards v. Dawson*, No. 3:24-CV-1821 (VDO), 2025 WL 1733246, at *4–5 (D. Conn. June 20, 2025) (dismissing similar procedural due process claim against Papoosha for lack of personal involvement); *Costa v. Kocaqi*, No. 3:24-CV-01586 (KAD), 2025 WL 1207538, at *8 (D. Conn. Apr. 25, 2025) (dismissing similar procedural due process claim against Washington for lack of personal involvement).

Because Bibiloni has failed to allege any facts suggesting that the named defendants were personally involved in violating his procedural due process rights, this claim is dismissed without prejudice. I grant leave to Bibiloni to file an amended complaint identifying who failed to provide him notice of the hearing and who designated him as an SRG prisoner based on insufficient evidence.

### 3. Eighth Amendment Conditions of Confinement Claim

Bibiloni also alleges that the conditions in the SRG unit violated his rights under the Eighth Amendment.[4] To establish an Eighth Amendment claim based on his conditions of confinement, Bibiloni must allege facts showing that the conditions resulted in a deprivation

---

[4] "A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight Amendment," *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017), but court records show Bibiloni had been sentenced when placed in the SRG unit. *See* note 4, *supra*. Accordingly, for the same reasons stated above, *see id.*, I will analyze Bibiloni's conditions of confinement claim under the Eighth Amendment.

that was sufficiently serious, and Defendants acted with deliberate indifference to his health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To be sufficiently serious, the conditions of his confinement must have deprived Bibiloni of "the minimal civilized measure of life's necessities" or constitute an "unquestioned and serious deprivation of basic human needs." *Id.* These needs include "food, clothing, medical care, and safe and sanitary living conditions." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (citation and internal quotation marks omitted). The Supreme Court has explained that "the Constitution does not mandate comfortable prisons," and "conditions [that] are restrictive and even harsh . . . are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347, 349 (1981).

Bibiloni describes conditions in the SRG unit that could potentially violate the Eighth Amendment. *See* Am. Compl. ¶ 23; *Rooks v. Santiago*, No. 3:20CV299 (MPS), 2020 WL 6784262, at *5 (D. Conn. Nov. 18, 2020) (noting that the court had permitted plaintiff's Eighth Amendment conditions of confinement claim to proceed where he alleged unsanitary conditions and threats to his safety while housed in the SRG unit). But Bibiloni has failed to allege any facts suggesting that any of the named defendants were personally involved in giving rise to or maintaining conditions in the SRG unit. Accordingly, as with Bibiloni's Fourteenth Amendment procedural due process claim, I will dismiss this claim without prejudice to Bibiloni filing an amended complaint identifying who was responsible for his conditions of confinement in the SRG unit.

### III.   ORDERS

For the reasons stated above, Bibiloni's First Amendment claim is dismissed with prejudice. His Fourteenth Amendment procedural due process and Eighth Amendment

conditions of confinement claims are dismissed without prejudice. If Bibiloni can supply facts establishing the personal involvement of any prison official in connection with his claims under the Eighth and Fourteenth Amendments, he may file an amended complaint on or before **February 13, 2026**. The amended complaint must be limited to these two claims only.

**SO ORDERED.**

New Haven, Connecticut
January 9, 2026

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge